## IN THE COURT OF APPEALS OF IOWA

No. 21-1288
Filed March 30, 2022

**IN THE INTEREST OF I.D.,**
**Minor Child,**

**S.D., Mother,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of her parental rights to her daughter. **AFFIRMED.**

Raya Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Ahlers, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**VOGEL, Senior Judge.**

When a parent has failed to engage in corrective services such that the conditions that led to removal continue to exist at the time of the termination-of-parental-rights hearing, we will affirm the juvenile court's decision. That is the case here.

## I. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly regarding credibility determinations. *Id.*

> Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis. The first step is to determine whether any ground for termination under section 232.116(1) has been established. If we find that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights.

*Id.* at 219–20 (internal citations omitted).

## II. The Mother's Issues on Appeal

I.D. was born in November 2020 and removed from her mother's care shortly thereafter for "unresolved and unacknowledged substance abuse issues" as well as "unaddressed mental health" issues.[1] The mother provided multiple positive drug screens during her pregnancy, including a positive test for

---

[1] In the summer of 2019, the mother's parental rights to another child were terminated, in part due to the mother's untreated substance-abuse and mental-health issues.

methamphetamine and amphetamine the day before I.D. was born.[2] The mother was offered reunification services by the Iowa Department of Human Services (DHS), but she was not receptive. I.D. was adjudicated a child in need of assistance on February 12, 2021, and services continued to be offered to the mother. After months of offered services, with no progress noted, the matter came on for termination of parental rights on August 12, 2021. On August 30, the court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(e), (g), and (h). (2021).[3]

A. *Statutory Ground for Termination*

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We proceed to review the statutory ground under section 232.116(1)(h), which states the court may terminate parental rights if it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

---

[2] In 2020, the mother tested positive for THC, amphetamine, and methamphetamine on April 29, May 21, June 18; she tested positive for amphetamine and methamphetamine on August 2 and November 4.

[3] The father's parental rights were also terminated; he does not appeal.

The mother only challenges the findings as to the fourth element, asserting I.D. could be returned to her care at the present time. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). To support this claim on appeal, the mother simply states she had adequate housing and daycare available for I.D. Even if the housing claim were not disputed by the State, much more would be required to allow the safe return of I.D. to the mother's care.

The juvenile court found the mother failed to correct the situation that led to the removal of I.D., including the mother's failure to participate in offered services, and in particular substance-abuse services. At the termination hearing, the mother admitted she used methamphetamine as late as April 2020, but she denies all illegal substance use after that date. The positive drug screens contained in the record belie the mother's denial. But because the mother denies all illegal substance use during her pregnancy and beyond,[4] she readily admits she had not completed a substance-abuse evaluation or complied with requested drug screen tests since I.D.'s birth. This refusal to comply became more problematic when workers observed "behavioral indicators" that raised questions of whether the mother was under the influence of illegal substances during some visits with I.D. The mother admitted she missed multiple visits, and DHS reported that the mother "struggles to attend all offered interactions as well as medical appointments" with

---

[4] The mother admits she last used methamphetamine in April 2020. While she also denies using illegal substances while pregnant, we note I.D. was born in November 2020.

I.D. In addition, the mother admits to having mental-health issues but failed to coordinate with DHS in order to participate in offered mental-health services.

We agree with the juvenile court's findings that the mother made no progress in addressing the issues that led to I.D.'s removal in spite of the many substance-abuse and mental-health services offered. Therefore, we agree the State proved by clear and convincing evidence I.D. could not be returned to the mother at the time of the termination hearing, and we find the ground for termination under section 232.116(1)(h) satisfied.

B. *Extension of Time for Reunification and Best Interests of I.D.*

Next, the mother asserts she should have been given an additional six months to work towards reunification. However, she fails to give any reason why additional time would be beneficial. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." In this case, the juvenile court found an extension of time was not warranted when the mother had "not engaged in any service that the court had ordered," and therefore she had not demonstrated progress that would allow such an extension of time. We agree.

As to I.D.'s best interests, Iowa Code section 232.116(2) provides, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." The mother asserts she "is currently gainfully employed, had attended therapy and reports she has appropriate housing." The mother provided a letter from her employer verifying

she has been employed since December 2020, and she deserves credit for maintaining employment. However, the mother acknowledged during the termination hearing her last face-to-face therapy session was about six months before the hearing. Also, as noted above, the State disputes the mother's housing claim. Furthermore, many of the mother's visits with I.D. have been concerning, with the mother often falling asleep or not showing up for scheduled visits. The DHS worker described the mother's visits with I.D. as "pretty inconsistent," which led to lessening the frequency of offered visits. The juvenile court found "the safety concerns that led to removal continue to exist today," and we agree those concerns remain.

I.D. is in relative placement with her older half-sibling. Those relatives have adopted the half-sibling and are willing to be a long term placement for I.D. She has several physical challenges and requires special medical attention, but she is being well cared for and is flourishing in the relatives' care. We agree termination is in I.D.'s best interests.[5]

**AFFIRMED.**

---

[5] The mother does not raise an issue under Iowa Code section 232.116(3). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (stating we do not need to address issues not raised on appeal).